**UNITED STATES of America**

v.

**Smith WESTMORELAND, Esther Westmoreland.**

**No. IP 66–CR–124.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Feb. 20, 1967.

Richard P. Stein, U. S. Atty., by Edward F. Kelly, Asst. U. S. Atty., for the United States.

William C. Erbecker, Indianapolis, Ind., for defendants.

## ENTRY ON MOTION FOR PRE-TRIAL DISCOVERY

STECKLER, Chief Judge.

The defendants are charged in a four-count indictment with violations of the Internal Revenue Code. Defendant Smith Westmoreland is charged in Count I with the unlawful possession and custody of a still and distilling apparatus; in Count II, with carrying on the business of a distiller without having given bond, and in Count III, with unlawful possession of nontaxpaid distilled spirits. The defendant Esther Westmoreland is charged in Count IV with the same offense as that charged against Smith Westmoreland in Count III.

The case is before the court on the defendants' motion for disclosure and production of evidence favorable to the accused. The motion calls for the names and addresses of government witnesses, and/or the names of eye-witnesses who cannot identify the defendants as being participants in the crimes charged against them. Defendants' counsel asserts that the motion is not frivolous and the production of the names and addresses of such witnesses prior to trial is necessary to afford defendants ample opportunity for a complete and proper defense, and to lay a basis for impeachment of the witnesses the government is relying upon for prosecution of the case, or as a part of the defendants' affirmative defense to the charges against them. The motion further states that the defendants have reason to believe that the government has in its possession "certain government-investigated reports germane and pertinent to the case" that the defendants would like to have made available to them for the purpose stated, or in the alternative, for an *in camera* inspection by the court of such reports so

that their rights relative to the requests they now make are protected. In support of the motion, defendants rely on Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

In the *Brady* case the Supreme Court speaking through Mr. Justice Douglas stated:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. at 1196.

In opposition to the motion the government states that the Supreme Court by the *Brady* decision made it clear that the prosecution's duty to provide the defense with evidence favorable to the accused is self-executing; that it requires no defense motion or court order, and that this rule is merely an extension of the prosecution's obligation to insure a fair trial. The government states that although the *Brady* rule requires no negative assertion by the prosecution that it does not have evidence favorable to the accused, it nevertheless states that it has no such evidence.

Simply to sustain or overrule the government's preemptive conclusion that it has no evidence favorable to the accused would leave bothersome questions. It can hardly be expected that the defendants will not renew their requests at some later stage of the proceedings. The defendants' motion and the nature of the government's answer present questions that deserve some indication of the court's attitude. For example, must the defendants be content with the government's conclusion that it has no evidence favorable to the defendants? When, if ever, may the government be required to make proof of some sort that it has no evidence favorable to the defendants? If such proof is to be required, how shall it be done? When shall it be done? —before trial? at the close of the gov-

ernment's case in chief? or after establishment of guilt?—if that time ever arrives. These are some of the questions confronting courts by reason of the *Brady* rule, the Jencks Act, 18 U.S.C. § 3500, the expanded Rules of Criminal Procedure as amended in 1966, particularly Rule 16, and more recently the Supreme Court's manifested attitude of greater liberality in ordering disclosure in criminal cases.

While several circuits have interpreted *Brady*, the extent to which the "favorable" nature of the information and its materiality must be apparent before the duty of voluntary disclosure devolves upon the prosecution is not clear. In United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964), where no request was made, the court held that the prosecution had a duty to make known to the defense the existence of two disinterested witnesses who would have testified that the defendant was not a participant in the robbery charged, and that the prosecution's failure to do so denied the defendant due process under the *Brady* rule. In so holding the court stated, "we think that such request is not a *sine qua non* to establish a duty on the prosecution's part." Id. at 137. In Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964), an appeal from denial of habeas corpus to a state prisoner, the court quoted with approval the language of Judge Edgerton in Griffin v. United States, 87 U.S.App.D.C. 172, 183 F.2d 990, 993 (1950):

"When there is substantial room for doubt [as to the prosecution's duty to disclose evidence that may reasonably be considered admissible and useful to the defense], the prosecution is not to decide for the court what is admissible or for the defense what is useful."

In the *Barbee* case the prosecution produced at the trial for "identification purposes only" a revolver belonging to Barbee without disclosing exculpatory results of ballistics and fingerprint tests. In reversing the district court's denial of

a writ of habeas corpus, the court held that it was no answer that the defendant's attorney failed to ask for the results of the tests; nor was the effect of the non-disclosure neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpatory evidence. How strong a showing of prejudice would be required in a given case, the court concluded, will depend on the nature of the charge, the testimony of the state, and the role the undisclosed testimony would likely have played.[1]

Consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice, and noting the "expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice," the Supreme Court, without dissent, in its first major ruling concerning criminal discovery procedures following its approval of the amended criminal rules, deemed reversible error a trial court's refusal to give conspiracy defendants' counsel access to grand jury testimony of trial witnesses. The defendants, the Court held, were entitled to examine the grand jury minutes relating to trial testimony of the prosecuting witnesses, and to do so while the witnesses were available for cross-examination. Dennis v.

United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).[2]

Though the *Dennis* case did not deal with the *Brady* doctrine and its constitutional implications, and is not directly in point in the case presently before this court, nevertheless the Supreme Court's language in that case reflects the Court's general attitude toward broader discovery in criminal cases and should be kept in mind in ruling on motions of the type here presented. For that reason elaboration seems in order.

The Court in the *Dennis* case, after finding the "particularized need" required under Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), turned to the question whether an *in camera* inspection by a trial judge is an appropriate or satisfactory measure when there is a showing of such "particularized need." This procedure, followed by production to defense counsel in the event the trial judge finds inconsistencies, the Court noted, has been adopted in some Courts of Appeal. Pointing out that in the Second Circuit it is available as a matter of right, the Court stated that while this practice may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony —the Court did not disapprove it for that purpose—it by no means disposes of the

1. For an exhaustive treatment of the question whether or under what circumstances a person accused of crime in a state court is entitled to inspection or disclosure of evidence in the possession or under the control of the prosecution, see Annot., 7 A.L.R.3d 8 (1966).

2. While a transcript of a witness' testimony before the grand jury may be available, this will not always be true. Rule 6(d), Fed.R.Crim.P., dealing with who may be present during grand jury proceedings, is not mandatory but merely permissive with respect to the presence of a stenographer or operator of a recording device for the purpose of taking the evidence. There is no statute or rule of procedure which requires that a record be made of the testimony of

witnesses before a federal grand jury. United States v. Cianchetti, 315 F.2d 584 (2 Cir., 1963). No uniformity of practice obtains among the various districts with respect to the taking and transcribing of grand jury testimony. In the Southern District of Indiana the practice is to report only the testimony which the government has some reason to preserve. Rule 16(a) Fed.R.Crim.P., provides that upon motion of the defendant the court may order the government to permit the defense to inspect and copy or photograph the "recorded testimony of the defendant before a grand jury." Whether this and the Supreme Court's decisions in Dennis and other recent cases presage future mandatory recording of testimony before a grand jury remains to be seen.

matter. Trial judges, the Court said, ought not be be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony where the "particularized need" has been demonstrated. The Court stated, it is not realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. It added: "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." Dennis v. United States, supra, 384 U.S. at 874–875, 86 S.Ct. at 1851. The Court concluded that the trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervising the discovery process; for example, to cause the elimination of extraneous matter and to rule upon applications by the government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced.[3] Cf. Fed.R.Crim.P. 16(e); 18 U.S.C. § 3500(c).

While the decision in the *Dennis* case could not turn on the Jencks Act, 18 U.S. C. § 3500, since Congress by that act in-

tended to exclude grand jury minutes from its operation, see Pittsburgh Plate Glass Co. v. United States, supra, 360 U.S. at 398, 79 S.Ct. 1237, and did not turn on a *Brady* question but was based on the trial court's refusal to expand interpretation of Rule 6(e) of the Federal Rules of Criminal Procedure,[4] the interplay of the Jencks Act, Rule 6(e), the *Brady* doctrine, and now Rule 16, is apparent.

Although at first reading it might appear that the Supreme Court threw open wide the doors for criminal discovery into grand jury proceedings, the Court stated clearly that it has recognized "the 'long established policy that maintains the secrecy of the grand jury proceedings in the federal courts.' United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077," and further, that it has ruled that, "when disclosure is permitted, it is to be done 'discretely and limitedly.' Id. at 683, 78 S.Ct. [983] at 987." Dennis v. United States, supra, 384 U.S. at 869, 86 S.Ct. at 1848. The Court pointed out that in general it has confirmed the trial court's power under Rule 6(e) of the Federal Rules of Criminal Procedure to direct disclosure of grand jury testimony " 'preliminarily to or in connection with a judicial proceeding,' " and that in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129,

---

3. On the basis of its holding in Dennis, the Supreme Court summarily vacated judgment and remanded four other cases in which disclosure of grand jury testimony was sought. See Leon v. United States, 384 U.S. 882, 86 S.Ct. 1912, 16 L.Ed. 2d 994 (1966); National Dairy Products Corp. v. United States, 384 U.S. 883, 86 S.Ct. 1913, 16 L.Ed.2d 995 (1966); Lucignano, et al. v. United States, 384 U.S. 884, 86 S.Ct. 1917, 16 L.Ed.2d 997 (1966); Worthy v. United States, 384 U.S. 894, 86 S.Ct. 1961, 16 L.Ed.2d 1000 (1966).

4. Rule 6(e) in its pertinent part reads as follows:
    "Secrecy of Proceedings and Disclosure. Disclosure of matters occurring

before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

424

the court "acknowledged that 'after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.'" Dennis v. United States, supra, 384 U.S. at 869–870, 86 S.Ct. at 1848. The Court went on to say, "In Procter & Gamble, supra, the Court stated that 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility * * *' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." 356 U.S. at 683, 78 S.Ct. [983] at 987." [Emphasis added.] `Id. at 870, 86 S.Ct. at 1849.

The conclusion that the Supreme Court today favors broader disclosure in criminal cases approaching, though not quite reaching, the civil practice cannot be doubted in light of the language of the Court when it states: "In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations." 384 U.S. at 873, 86 S.Ct. at 1851.

■ In view of the Supreme Court's going as far as it has in the *Dennis* decision, one might be quick to conclude that production of the type of material and information sought by the defendants in the case at hand would be ordered without question, but the circumstances in this case do not justify such a conclusion. While the Jencks Act and the new Criminal Rules for discovery procedure expand the right of discovery in criminal cases, at the same time they prescribe limitations. Each case is sui generis when it comes to determining the time at which, the means by which, and the extent to which discovery is to be permitted.

Rule 16(a) provides that upon motion of a defendant, the "court may order the attorney for the government to permit the defendant to inspect and copy or photograph" relevant (1) "written or recorded statements or confessions made by the defendant," (2) "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case," and (3) "recorded testimony of the defendant before a grand jury."

Rule 16(b) provides that upon motion of a defendant, the "court may order the attorney for the government to permit the defendant" (under prescribed limitations, such as materiality and reasonableness) to "inspect and copy or photograph" other books, papers, documents, tangible objects, or places. However, internal government documents made by government agents in connection with the investigation or prosecution of the case are exempt from discovery. And, except as provided for reports of examinations and tests in subdivision (a) (2), statements made by government witnesses or prospective government witnesses to agents of the government are also exempt from discovery except as expressly provided by 18 U.S.C. § 3500.

Rule 16(c) permits the court to condition a discovery order under subdivision (a) (2) and subdivision (b) by requiring the defendant to permit the government to discover similar items which the defendant intends to produce at the trial and which are within his possession, custody or control under restrictions similar to those placed in subdivision (b) upon discovery by the defendant. The Advisory Committee's note to Rule 16(c) [5] states that "there are some situations in which mutual disclosure would appear necessary to prevent the defendant from obtaining an unfair advantage." Such situations arise in cases involving opinions of experts making psychiatric examinations, or in cases in which "mutual disclosure so far as consistent with priv-

---

5. Title 18 U.S.C.A., Fed.R.Crim.P., Rule 16(c), Notes of Advisory Committee on Rules (Supp. 1966).

ilege against self-incrimination would seem as appropriate as in civil cases."

Judge James M. Carter, of the Southern District of California, who has contributed much in the way of helpful legal writings concerning practical procedures in both criminal and civil cases, and who for years has been a member of the Judicial Conference Committee on Trial Practice and Technique (formerly Committee on Pretrial Procedure), and more recently Chairman of a Subcommittee of that Committee to make a study of special problems involved in the pretrial of criminal cases, has written concerning the suppression of evidence favorable to an accused and the effect of the *Brady* decision.[6] At the time of his writing prior to *Dennis* and prior to the adoption of the Amendments to the Federal Rules of Criminal Procedure, Judge Carter did not believe the Supreme Court by the *Brady* decision intended a complete innovation providing a basis for defense counsel to make motions prior to trial to inspect all evidence in the hands of the prosecution favorable to the accused on the issue of guilt or punishment. He points out that *Brady* does not replace the Jencks Act; that the Jencks Act provides that *after* a witness testifies in court, a copy of any statement made or adopted by him must be produced for inspection of defense counsel, and that *Brady* does not hold that the statements must be produced *before* the trial starts. In Judge Carter's view, any application or motion by the defense, based on *Brady*, properly comes after the government has closed its case in chief. He observes that in the ordinary case, various of the statements of witnesses by that time will have been produced by the government under

the Jencks rule and inspected by the defense.

More recently another writer has expressed the view that Judge Carter's reading of *Brady* is overly restrictive, and that to apply *Brady* as Judge Carter suggests would be an inefficient way to administer the doctrine.[7] Noting that in *Brady* the request for disclosure was prior to trial, he makes the point that the breach of duty by the prosecutor was continuing from the time of the request. He reasons that disclosure of favorable information after the government's case may be too late and necessitate a mistrial. His view is that, to the extent possible, pretrial disposition of such matters is preferable and that new Rule 16 of the Federal Rules of Criminal Procedure provides an appropriate procedure for doing so.

While this court is an advocate of liberal pretrial disclosure to avoid surprise during trial, especially in civil trials,[8] and applies many of the recommendations of the Study Group of the Committee on Trial Practice and Technique of the Judicial Conference respecting the trial of protracted cases, both civil and criminal,[9] the court is not unmindful of the desirability of maintaining the efficacy of the adversary system as a means of administering justice—justice based on truth—truth, both from the side of the government and from the side of the defendant, bearing in mind the constitutional protections of the defendant.

Many of the controversial discovery problems in criminal cases under the old rule have not been explicitly resolved by amended Rule 16. This may be attributed to a recognition by the rule-

---

6. Carter, Suppression of Evidence Favorable to An Accused, 34 F.R.D. 87 (1964).

7. Rezneck, The New Federal Rules of Criminal Procedure, Selected Essays on the New Federal Rules: Civil, Admiralty, Criminal and Proposed Appellate, The Georgetown L.J. (1966), p. 86, n. 28.

8. See, e. g., Steckler, Need There Be Surprise in Civil Trials?, Indiana State Bar Association Journal, Res Gestae, November 1964, p. 5.

9. See Judicial Conference Study Group on Protracted Litigation, Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351 (1960).

makers that such problems require resolution on a case-by-case basis. These problems include defense discovery rights as to statements of witnesses whom the government does not plan to call at the trial, and lists of witnesses in noncapital cases whom the government does plan to call at the trial or who have knowledge of the events on which the prosecution is based.[10] If the prevailing requirements of pretrial disclosure in civil cases could be used as guides in criminal cases, many of the controversial discovery problems in criminal cases would be eliminated. However, the rulemakers had in mind the likelihood of abuses on expanding discovery rights in criminal cases. Subdivision (e) of Rule 16 grants the court authority to exercise broad discretion upon a sufficient showing at any time to order that discovery or inspection be denied, restricted or deferred, or to make such other order as is appropriate under the circumstances of the case. Upon motion by the government the court pursuant to the rule may permit the government to make such showing, in whole or in part, in the form of a written statement to be inspected by the court *in camera*. If the court enters an order granting relief following a showing *in camera*, the entire text of the government's statement is required to be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal by the defendant. The Advisory Committee recognized that control of abuses of discovery was necessary if discovery were to be expanded in the fashion proposed, and now permitted, by subdivisions (a) and (b) of the Rule. It is interesting to note the considerations the Advisory Committee singled out to be taken into account by the court in granting protective orders. Among them are: the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to the national security. Cf. Dennis

v. United States, supra, 384 U.S. at 875, 86 S.Ct. 1840. These considerations seldom are encountered in granting or denying protective orders in civil cases.

■ The amendments of the Federal Rules of Criminal Procedure provide another innovation peculiarly adaptable to the implementation of discovery rights in criminal cases. Rule 17.1 provides that "[a]t any time after the filing of the indictment or information the court upon motion of any party or upon its own motion may order one or more conferences to consider such matters *as will promote a fair and expeditious trial*." [Emphasis added.] Significantly, aside from discovery disclosures required to be made on motion and order pursuant to the explicit language of Rule 16, disclosure of other matter pursuant to a pretrial conference is not compulsory. Indeed, Rule 17.1 provides that "[a]t the conclusion of a conference the court shall prepare and file a memorandum of the matters *agreed* upon." [Emphasis added.] Further, it provides that no admissions made by the defendant or his attorney at the conference shall be used against the defendant unless the admissions are reduced to writing and signed by the defendant and his attorney. In short, disclosures from either side at a pretrial conference must be kept on a voluntary basis except as provided in Rule 16 or pursuant to a valid order otherwise.

Although until the adoption of Rule 17.1 of the Federal Rules of Criminal Procedure there was no counterpart to Rule 16 of the Federal Rules of Civil Procedure (Pretrial Procedure), trial courts have utilized pretrial conferences in criminal cases, particularly in cases involving numerous defendants, or in complex or potentially protracted cases. Experience has taught that the pretrial conference itself is one of the most efficient procedures for pretrial discovery, both in criminal and in civil cases. Not infrequently it has been the government

---

10. Rezneck, supra note 6, at 86.

that has withheld disclosures in pretrial conferences. In some few cases, one with even a slight esoteric knowledge could understand why: to avoid the very dangers the Advisory Committee singled out as considerations the court will take into account in granting or denying protective orders pursuant to subdivision (e) of Rule 16. Cf. Dennis v. United States, supra at 875, 86 S.Ct. 1840, 18 U.S.C. § 3500.

■ Speaking in general with the foregoing in mind, the court concludes that in noncapital cases, in the absence of an agreement on the part of the government the court is without authority to order the government to produce a list of the government's witnesses, whether or not the government plans to call such witnesses at the trial, or whether or not such witnesses have knowledge of the events on which the prosecution is based. It follows that if the court would not order production of a list of the government's witnesses, it would not order production of their criminal records, if any. Nor, in advance of trial, except as provided in Rule 14 (Relief from Prejudicial Joinder—not in issue here), or upon a defendant's making a showing of materiality to the preparation of his defense and that his request is reasonable, would the court on motion of a defendant order the government to produce the statement of a codefendant. As a practical matter, however, it should be observed that where codefendants are represented by the same counsel, their counsel properly may move for production of the statement of each defendant, if statements were given. Where codefendants are represented by separate counsel, each counsel may separately, or jointly if they agree to do so, move pursuant to Rule 16(a) for production of his respective defendant's statement, and upon production cause an exchange to be made. If for protective reasons they elect to proceed separately and to withhold from each other the statements their respective clients made, upon proper motion,

subject to the opportunity of the government or either defendant to move for a protective order, the court would cause an undisclosed statement to be produced.

■ With specific reference to the case before the court, the defendants' motion calling for the names and addresses of the government's witnesses and/or the names of eye-witnesses who cannot identify the defendants as being participants in the crimes charged in the indictment, and for production of the so-called "government investigated reports germane and pertinent to the case," the same should be, and is hereby overruled.

■ As to the defendants' motion in the alternative for an *in camera* inspection by the court of such reports, since the motion is based on Brady v. State of Maryland, supra, and asks for evidence in the nature of reports or other internal government documents, which are exempt from production under Rule 16(b), the motion is denied without prejudice and may be renewed by the defendants at the close of the government's case, or prior thereto if a basis for production under the *Brady* doctrine is demonstrated. At such time, should the motion be renewed, if deemed required the court will order an *in camera* inspection of such portions of the United States Attorney's file, or of the goverment's written statement in lieu thereof as provided by Rule 16(e) if such a written statement should be permitted pursuant to a protective order as there provided. Upon such examination the court will return to the United States Attorney all work product material, will exhibit to the defendants and their counsel all matters favorable to the defendants bearing on their guilt or innocence (the degree of punishment not being an issue in the type of case before the court), cf. Brady v. State of Maryland, supra, and will order the balance of the file sealed and delivered to the Clerk so that it may accompany the record on appeal, if any. The United States Attorney will be grant-

ed permission to substitute photostatic copies for material in the *in camera* file and have returned to him the original material.

It is so ordered.