STATE OF CONNECTICUT *v.* JOSEPH J. MILARDO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 9-9704

Argued May 11—decided July 17, 1970

*John Poulos*, of Hartford, for the appellant (defendant).

*John F. Mulcahy, Jr.*, deputy chief prosecuting attorney, for the appellee (state).

JACOBS, J. The information contains two counts. In the first count, the defendant was charged with the crime of breach of the peace (§ 53-174), and, in the second count, with the crime of interfering with and abusing a police officer (§ 53-165). The jury returned a verdict of guilty on both counts. From the judgment rendered on the verdict, the defendant appealed.

The assignments of error are numerous. No question has been raised whether the evidence was sufficient, beyond a reasonable doubt, to sustain the conviction. The assignments of error are divided into two parts: (a) errors appearing on the face of the record, and (b) errors in the conduct of a jury trial. We shall take up these assignments in this order, with a short summary of the essential facts on which the state relied. In this way the claimed errors in the rulings will be more clearly understood.

Two radically variant and divergent versions of the events and circumstances which led to the defendant's arrest were given by witnesses produced at the trial. The defendant's brief concedes that the testimony "was conflicting as to whether or not the defendant was struck without provocation by the police officer, or whether the police officer struck the defendant with good cause." The answers involved weighing conflicting evidence and passing on the credibility of witnesses, and thus the determinative issues were brought distinctly and peculiarly within the jury's province.

The state offered evidence to prove these facts: On September 24, 1967, between 4 and 4:30 p.m., State Trooper Lineberry was assigned to investigate a four-car accident at the intersection of routes 17 and 6A in the town of Portland. A large crowd had gathered at the scene. During the course of the investigation, the officer asked Miss Connolly, the operator of a "noncontact" automobile, to accompany him to the police cruiser, in order to obtain a statement from her. The defendant shouted at the officer in a very loud voice: "Why wasn't I given one of these wrecks?" The officer explained to the defendant the reason why he had not been assigned to tow one of the wrecks. As the officer walked away, the defendant "grabbed the trooper's arm and turned him around." The defendant was ordered to release

the officer's arm, whereupon the defendant grabbed the trooper "by his shirt collar in the area of the throat, twisted it so that the trooper was unable to breathe or talk" and marched "the trooper backwards in a bent-over position." Unable to free himself from the defendant's grasp, the officer had to strike the defendant with his blackjack, but the defendant persisted in grappling with the officer. The trooper was compelled to use his blackjack a second time, causing the defendant to fall to his knees. When the trooper attempted to use handcuffs to restrain the defendant, the "defendant reached around, between and under the legs of the trooper and grabbed and squeezed the trooper's" private parts. Finally, fellow officers had to free the trooper from the defendant. While struggling with the police officers, the defendant screamed at Lineberry: "I'm going to get you," and "I'll sue you for this." As a result of the scuffle, the "officer's tie had been torn off, his collar button was ripped off, and he had a bruise on his neck."

The defendant claimed to have proved that he did not obstruct the officer in the performance of his duties; that he did not threaten the officer; and that he was merely questioning the officer why he was not called to tow one of the cars involved in the accident.

The verdict imports that the jury decided the issues adversely to the claims made by the defendant. Moreover, as the verdict stands unquestioned by a motion to set it aside, it must be presumed to have been based on sufficient evidence to support it.

## I

### ERRORS APPEARING ON THE FACE OF THE RECORD

The defendant first contends that the trial court erred in the denial of the pretrial motion for dis-

covery and inspection. In the motion, he sought an order for permission to examine the state's file to determine for himself what information or material in it was exculpatory; for a list of all witnesses interviewed by the state police; and for a photograph or photographs of the scene of the accident where the alleged offenses occurred.

Both in his brief and on oral argument, the defendant urged that "he should have the right to inspect the state's file and determine for himself . . . exculpatory information or material relevant to his defense, or that the court examine the state's file and base its decision upon its own examination of the state's file." In other words, the defendant claims the unqualified right to full discovery.

"Discovery in criminal cases is a recent and fast-moving development." 1 Wright, Federal Practice and Procedure § 251. "The subject of criminal discovery has been in many ways a weathervane of the developing changes in defendant's procedural rights." 8 Moore, Federal Practice ¶ 16.02[1]. In 1967, Connecticut enacted Public Act No. 706 §§ 1 to 3, now General Statutes § 54-86a, entitled, "An Act concerning Criminal Discovery." Subsection (a) permits discovery of six categories of materials: (1) exculpatory information or material; (2) written or recorded statements, admissions or confessions made by the defendant; (3) books, papers, documents or other tangible objects obtained from or belonging to the defendant; (4) records of physical or mental examinations of the defendant; (5) recorded testimony of the defendant before a grand jury; (6) prior convictions of the defendant. Subsection (b) provides that when the court grants discovery it shall specify, in the order, the time, place and manner of making the discovery and inspection permitted, and may prescribe such terms

and conditions as are just.[1] Subsection (c) provides for a continuing duty to disclose by subsequent motion "upon a showing of cause why such motion would be in the interest of justice."

In our quest for fairness in the conduct of criminal trials, we must bear in mind that the prosecuting attorney "is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the citizens . . . . His conduct and language in the trial of cases in which human life or liberty . . . [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." *State v. Ferrone*, 96 Conn. 160, 168; see *State v. Ferrone*, 97 Conn. 258, 270; *State v. Zimnaruk*, 128 Conn. 124, 127. "The State's obligation is not to convict, but to see that, so far as possible, truth emerges. . . . A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim." *Giles v. Maryland*, 386 U.S. 66, 98, 100 (concurring opinion).

---

[1] On December 7, 1967, the court *(Savitt, J.)* granted paragraphs 1 and 2 and denied paragraphs 3 and 4 of the defendant's motion for disclosure and production. We know this only from a letter—which appears in the record dated December 19, 1967—from the office of the chief prosecuting attorney and addressed to counsel for the defendant. While the discretion provided for in subsection (b) of General Statutes § 54-86a is vast, it is better practice for the court to specify in its order the time, place and manner of making the discovery and inspection. See *United States v. Aadal*, 280 F. Sup. 859; *United States v. Harrison*, 265 F. Sup. 660.

"He [the prosecuting attorney] may prosecute with earnestness and vigor—indeed, he should do so. But, while he might strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger* v. *United States,* 295 U.S. 78, 88; cf. ABA Code of Professional Responsibility, Canon 5, EC 5-7 to 5-13 (1970). "Nondisclosure—deliberate withholding—of important information . . . , which is in the exclusive possession of the State is, in . . . [our] judgment, not reconcilable with the concept of a fair trial and with the Due Process Clause." *Giles* v. *Maryland,* supra. "The prosecutor has, within a framework of these rules, some discretion in determining which evidence unfavorable to the prosecution will be disclosed to the defense, and he is permitted to judge, in the context of the entire case, the value of exculpatory evidence to the defense in terms of its probable impact on the jury. Since a prosecutor is, presumably, an experienced trial attorney, the standard is one that is meaningful to him." Note, "The Duty of the Prosecutor to Disclose Exculpatory Evidence." 60 Colum. L. Rev. 858, 861.

We would be reluctant at this time to permit unlimited and unqualified access to the state's file by a criminal defendant. Since the enactment of our criminal discovery statute in 1967, authority construing our statute is as yet too meager. We have such a paucity of experience with criminal discovery rules as to be unable to make meaningful extrapolation.[2] In the light of the movement toward liberal criminal discovery, however, we suggest that prosecuting attorneys approach the problem with the "realization that disclosure, rather than suppression,

---

[2] The only reference to General Statutes § 54-86a is contained in *State* v. *Vennard,* 159 Conn. 385, 389.

of relevant materials ordinarily promotes the proper administration of criminal justice."[3] *Dennis* v. *United States,* 384 U.S. 855, 870. And finally, we point out that a prosecutor's unilateral decision to keep exculpatory material undisclosed invites the risk of error.

The denial of a motion for an order of a list of all the state's witnesses has been upheld in a number of cases in the federal courts. See *United States* v. *Chase,* 372 F.2d 453, 466, cert. denied, 387 U.S. 907; *United States* v. *Burgio,* 279 F. Sup. 843, 847; *United States* v. *Tanner,* 279 F. Sup. 457, 473; *United States* v. *Birrell,* 276 F. Sup. 798, 826; *United States* v. *Cobb,* 271 F. Sup. 159, 162; *United States* v. *Westmoreland,* 41 F.R.D. 419, 427. Quite independently of the statute, however, there may be circumstances where the prosecution is under a constitutional obligation as an ingredient of due process to disclose to the defense the names of persons known to the prosecution whose testimony might be helpful to the defense. See *United States ex rel. Meers* v. *Wilkins,* 326 F.2d 135, 140. In any event, on the present record the defendant has failed to make out a particularized need.

It is not realistic to assume, as has been suggested, that the trial judge will determine the nature and utility of relevant material in the state's file. Trial judges ought not to be burdened with the task or the responsibility of examining voluminous files to ascertain what material may be useful to a defendant. "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made

---

[3] See Symposium, "Discovery in Federal Criminal Cases," 33 F.R.D. 47; Traynor, "Ground Lost and Found in Criminal Discovery," 39 N.Y.U.L. Rev. 228; "Developments in the Law—Discovery," 74 Harv. L. Rev. 940, 1051-63; Fletcher, "Pretrial Discovery in State Criminal Cases," 12 Stan. L. Rev. 293.

only by an advocate. The trial judge's function in this respect is limited to deciding whether a case has been made for production . . . ." *Dennis* v. *United States,* supra, 875. "The whole discovery procedure contemplates an absence of judicial intervention in the run-of-the-mill discovery attempt." Kaufman, "Judicial Control Over Discovery," 28 F.R.D. 111, 116.

Our view, therefore, is to minimize judicial intervention in criminal pretrial discovery. See 4 Moore, Federal Practice ¶ 26.02[5]. The administrative burden of deciding usefulness in every case would overbear the courts. The judge's task is that of a neutral arbiter, not a defense strategist.[4]

## II

### ERRORS IN THE CONDUCT OF A JURY TRIAL

The defendant next contends that the trial court committed reversible error in excusing the juror, Malcolm Sterns, on the second day of the trial over the defendant's objection; the excused juror, it is claimed, was not "unable to further perform his duty" within the meaning and purview of § 51-243 of the General Statutes.[5] At the commencement of

---

[4] This does not mean that during trial the court may not be permitted to examine the state's file for an in camera inspection to determine contradictions in the testimony of a witness. Such a procedure has been approved in *State* v. *Purvis,* 157 Conn. 198, 208.

[5] "Sec. 51-243. ALTERNATE JURORS IN CIVIL AND CRIMINAL CASES. (a) In any civil action or criminal prosecution to be tried to the jury in the superior court, the court of common pleas or the circuit court, if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, one or two additional jurors shall be added to the jury panel, to be known as 'alternate jurors.' Such alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel . . . (b) . . . and the oaths to be administered shall be as provided in section 1-25. (c) Alternate jurors . . . shall attend at all times upon trial of the

trial on July 8, 1968, it appearing that the case would be somewhat protracted, an alternate juror was selected in a manner provided by law. It is not disputed that the alternate juror was present at all times upon the trial of the cause and was properly seated "with or near the jurors constituting the regular panel, with equal opportunity to see and hear all matters adduced in the trial of the cause." The court, in excusing the juror, stated: "I think he's under such stress and strain as a result of his check problems that he would not be a proper juror." It appears that in all respects throughout the trial there was compliance with the provisions of the statute. "The right of the court, in a proper exercise of discretion, to discharge or reject a juror, of its own motion, for good cause, is generally recognized and obviously salutary. . . . Such action is reviewable on appeal . . . ." *State* v. *Parker*, 112 Conn. 39, 56; see 50 C.J.S., Juries, § 290.

The defendant insists that the limitation in the statute upon the power of the court to substitute an alternate juror for a regular juror must be narrowly and restrictively construed to mean that there can be no substitution in any other instance.

---

cause. They shall be seated when the case is on trial with or near the jurors constituting the regular panel, with equal opportunity to see and hear all matters adduced in the trial of the case. If . . . any juror shall, for any reason, become unable to further perform his duty, the court may excuse him and, if any juror is so excused or dies, the court may order that the alternate juror if there is but one or, if more than one, that one who is designated by lot to be drawn by the clerk shall become a part of the regular panel and the trial shall then proceed as though such juror had been a member of the regular panel from the time when it was begun."

This "legislation is of a type, though differing in phraseology, yet not in principle, with that adopted in a number of our sister states, and has been induced no doubt by the widening scope of criminal trials and the danger of mistrial through death, illness, or other incapacity of jurors serving in such cases." *State* v. *Dolbow,* 117 N.J.L. 560, 564, appeal dismissed, 301 U.S. 669; see 1 Busch, Law and Tactics in Jury Trials § 25, p. 61 n.26 (Encyc. Ed.).

In *People* v. *Howard,* 211 Cal. 322, 325, the court said: "In the execution of the means which the lawmakers provide to enforce the guaranties of the organic law, the end to be effected must be through the adoption of a reasonable and practical method to secure attainable ends. When this has been done, nothing more can be demanded, from the very nature of things. It is not claimed that the verdict would have been any different had the alternate juror not participated in the deliberations of the jury. He was subject to the same challenge and took the . . . oath [as provided in Conn. General Statutes § 1–25] . . . . We should assume that in all respects he obeyed his oath and that he well and truly tried all the matters in issue and rendered a true and impartial verdict in the cause. Defendant's right was to a fair and impartial jury, not a jury composed of any particular individuals." That is all that was guaranteed to him by the constitution. *People* v. *Mitchell,* 266 N.Y. 15, 17; *State* v. *Violett,* 79 S.D. 292, 303; *Marvin Drug Co.* v. *Couch,* 134 S.W.2d 356, 362 (Tex. Civ. App.); *State* v. *White,* 244 La. 585, 619 (on application for rehearing); 5 Wharton, Criminal Law and Procedure §§ 1995, 2004; 47 Am. Jur. 2d, Jury, § 121; note, 109 A.L.R. 1495; cf. *Houston & T. C. Ry. Co.* v. *Waller,* 56 Tex. 331, 337 (juror not "disabled from" sitting by mere distress of mind).

We shall endeavor to review the rulings under part (b) of the assignment of errors so far as the record permits us to do so.

The defendant called a witness who testified that the defendant's character was that of a "peaceful, law-abiding citizen." The defendant, on redirect examination of this witness, attempted to bring out whether the defendant "is of a quarrelsome nature, a fighter, a roisterer, a brawler." The question was excluded over the defendant's objection, on the ground that the answer would inevitably lead into

the realm of speculation. "This question was properly excluded. Proof of character is confined to proof of reputation. Particular facts and circumstances which may tend to prove the reputation or confirm the statements of a witness regarding character are to be excluded." *Verdi* v. *Donahue,* 91 Conn. 448, 454; see Holden & Daly, Conn. Evidence § 114, p. 524. If the witness answered the question in the negative, the state would have the right to pursue a long cross-examination to elicit facts in rebuttal. The court properly excluded this line of inquiry.

After the complaining witness, Trooper Lineberry, had testified on direct examination and was fully cross-examined, the defendant called him as his own witness and he was asked: "[H]ave you ever been arrested for an assault or battery or any crime involving assault?" Apart from such a radical departure from our established practice, it is sufficient to point out that the statute (§ 52-145) speaks only of persons who have been convicted of crime, and it provides that a conviction may be shown to affect the credibility of the witness. See *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472. The question was improper. It was rightly excluded. 3A Wigmore, Evidence § 980a (Chadbourn Rev.).

The defendant asserts that he was unduly restricted in his argument to the jury concerning the presence of the state police commissioner in the courtroom during the trial. "The trial court is invested with a large discretion with regard to arguments of counsel, and we should interfere only where that discretion was clearly exceeded or abused to the manifest injury of some party." *Bryar* v. *Wilson,* 152 Conn. 162, 165. The commissioner of state police was not a witness in the case; he was merely a spectator in the courtroom. It may be tempting for counsel to create an impression that the commissioner's

presence in the courtroom served some ulterior purpose; nevertheless, it is improper for counsel to make statements not based on the evidence. 88 C.J.S., Trial, § 181. "This method of the trial of cases is reprehensible, and has been frequently disapproved of by this court." *State* v. *Cabaudo*, 83 Conn. 160, 166.

Criticism of the trial court's alleged improper comments about the defendant's counsel in the presence of the jury cannot be considered on the state of the record. We lack sufficient underlying material to determine whether such comments as "Don't put words in his mouth," "The question should not have been asked," "You can't testify," "That was not a proper remark," and "Every case is important that the State is involved," injuriously affected the defendant. Inevitably some insignificant remarks creep into every trial. "The off-hand remarks of a trial judge in announcing an interlocutory ruling, are not the proper subject of such minute and verbal criticism." *Fuller* v. *Johnson*, 80 Conn. 493, 497. To predicate error upon such isolated comments would be to reduce the judge to a " 'mere automaton, or at most the attitude of the presiding officer of a deliberative assembly, with no greater powers than those of announcing the utterances or conclusions of others.' " 1 Wigmore, Evidence (3d Ed.) § 21, p. 374. We refuse to place the judge in such a straitjacket.

The claims of error assigned in the charge to the jury are without merit.

We decline to review the remaining assignments of error for the reason that they are far too general and lacking in specificity. Merely referring to the record to show alleged errors, without specifying particularly what they are, raises nothing to review. We would be hampered in reviewing the remaining

alleged errors because of the generality of the defendant's brief, which does not set forth and discuss the alleged errors specifically and does not make exactly clear each point he relies upon in seeking review.

There is no error.

In this opinion CASALE and KINMONTH, Js., concurred.